**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSE DOCTOR** | : | |
| | : | |
| **v.** | : | **C.A. No. 2006-429T** |
| | : | |
| | : | |
| **ASHBELL T. WALL** | : | |

**MOTION TO DISMISS AND ALTERNATIVE RESPONSE**
**TO PETITION FOR WRIT OF HABEAS CORPUS**

For the reasons identified in designated party/respondent State of Rhode Island's accompanying memorandum of law, this Court should dismiss or deny the petition for writ of habeas corpus that Jose Doctor filed pursuant to 28 U.S.C. § 2254.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Christopher R. Bush**

**CHRISTOPHER R. BUSH, #5411**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: October 25, 2007

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that I filed this document electronically on October 25, 2007, and that it is available for viewing and downloading from the ECF system. I also certify that I sent a copy of the within motion to the following by first-class mail on the same date:

Jose Doctor
P.O. Box 8273
Cranston, R.I. 02920

/s/ Christopher R. Bush

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSE DOCTOR** | : | |
| | : | |
| **v.** | : | **C.A. No. 2006-429T** |
| | : | |
| | : | |
| **ASHBELL T. WALL** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND ALTERNATIVE RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Petitioner Jose Doctor ("Jose") raises four claims in his Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody ("Petition"). Jose's claims are identical to those that his co-defendant and brother, Alexis Doctor ("Alexis"), raised in the habeas petition that this Court denied and dismissed in March. Jose has not exhausted all of his claims in state court and those that he did exhaust lack substantive merit. This Court should therefore dismiss or deny the instant Petition.

## II. TRAVEL OF THE CASE

On March 1, 1991, a Providence County grand jury indicted Jose and Alexis for the murder of Willie Davis, conspiring with an unindicted juvenile to commit murder, and two counts of assault with intent to murder. Three successive jury trials followed. The first trial commenced in February 1992 and ended in a mistrial. A jury convicted both Jose and Alexis in a second trial that commenced one month later. The Rhode Island Supreme Court reversed those convictions on appeal because the trial justice improperly restricted the scope of defense counsel's cross-examination of a trial witness, Kimani Morris. *See* Exhibit A (State v. Doctor,

644 A.2d 1287 (R.I. 1994)).[1] A jury convicted Jose and Alexis of murder, conspiracy, and assault with a dangerous weapon in a third and final trial that followed in January 1995.[2] The Rhode Island Supreme Court affirmed those convictions on February 19, 1997. *See* Exhibit D (State v. Doctor, 690 A.2d 321 (R.I. 1997)).

Jose and Alexis thereafter filed applications for post-conviction relief seeking to have the Rhode Island Superior Court vacate their convictions based on ineffective assistance of counsel and newly discovered evidence. The Superior Court (Krause, J.) denied the applications after hearing on September 29, 2003.

The Rhode Island Supreme Court rejected Alexis's appeal of the denial of his PCR application on January 31, 2005. *See* Exhibit E (State v. Doctor, 865 A.2d 1064 (R.I. 2005)). Alexis filed a petition under 28 U.S.C. § 2254 in this Court on or about October 11, 2005, identifying the following grounds for relief:

1. The Superior Court deprived him of right to confront and cross-examine a witness when it denied defense counsel the opportunity to fully explore possible bias, prejudice or ulterior motive. *See* Exhibit 1 at 6.

2. Defense counsel was ineffective as he failed to investigate the discrepancy regarding conflicting testimony of the number of individuals in the victim's vehicle and failed to raise a self-defense defense. *See* Exhibit 1 at 7.

3. The Superior Court erred in instructing the jury that Alexis was incarcerated without advance warning and/or Alexis's knowledge. *See* Exhibit 1 at 7.

[1] The numeric exhibits to which the State cites in this memorandum are attached; the alphabetic exhibits are included in the appendix that the State separately filed in accordance with Rule 5 of the Rules Governing Section 2254 Cases In The United States District Courts and AP 4(b)(1)(C).

[2] The Superior Court sentenced Doctor to life imprisonment on the murder charge, a ten-year suspended sentence and ten years on probation on the conspiracy charge, and five-year suspended sentences and five years on probation on the two assault charges.

> 4. Defense counsel was ineffective as he failed to investigate and/or examine a witness who would have been available to testify at the 1995 trial. *See* Exhibit 1 at 7.

Over Alexis's objection, *see* Exhibit 2 (Alexis's objection to State's motion to dismiss), this Court denied and dismissed Alexis's habeas petition in March. *See* Exhibit 3 (Memorandum and Order, Doctor v. Wall, C.A. No. 05-424ML (March 28, 2007)).

The Rhode Island Supreme Court denied Jose's PCR appeal on May 4, 2006. *See* Exhibit H (Doctor v. State, 897 A.2d 53 (R.I. 2006)). In so doing, the court declined to "readdress" the arguments that it had previously rejected in connection with Alexis's PCR appeal, specifically, his ineffective assistance of counsel claim based on defense counsel's alleged failure to discuss a proposed incarceration instruction (or object thereto) and a claim of newly discovered evidence in the form of the recanted testimony of an occupant in the car at which Jose and Alexis shot. *See* Doctor, 897 A.2d at 53-54.

Jose filed the instant Petition in September 2006. The section of the Petition in which Jose identifies the grounds on which he claims to be held unlawfully appears to be a copy of the corresponding section from Alexis's petition; at the very least, he identifies the same grounds for relief that Alexis did in his habeas petition. *Compare* Petition at 6-7 *with* Exhibit 1 at 6-7. This Court issued an Order requiring the State to respond to Jose's Petition on September 28, 2007.

## III. STATEMENT OF FACTS

The Rhode Island Supreme Court summarized the relevant facts giving rise to Jose's convictions as follows:

> On August 11, 1990, John Norman (Norman), Rodney Perry (Perry), Kimani Morris (Morris), Ronald Nelson (Nelson), Mark Ellis (Ellis), and Willie Davis (Davis) went to Sonny and Dennis', a club on the corner of Eddy and Globe Streets in Providence. Nelson was driving the car, Ellis sat in the middle of the front seat, and Davis sat on the front passenger side. Morris sat in the back seat on the driver's side, Norman sat next to Morris, and Perry was on the passenger side in the rear of the car. After patronizing Sonny and Dennis' for about one

> hour, they went to the River Cafe in the Fox Point section of Providence. They never actually entered the River Café, after having tried unsuccessfully to avoid paying a cover charge in order to gain entrance, but instead socialized outside for about a half hour. They thereafter returned to Sonny and Dennis'. When they arrived there, traffic was heavy around the area of Sonny and Dennis', and as a result the car in which the six men were traveling was stopped in front of the club. Suddenly three men appeared from behind the club and approached the car. One of the men, later identified as the defendant Alexis Doctor, ran to the passenger side, another, later identified as Jose Doctor, went to the driver's side, and the third, a juvenile, went to the front of the car. All three were carrying guns. The three men began shooting at the six passengers in the car and continued shooting for about five minutes. The gunmen ran back to the rear of the club. As a result of the shooting, Davis was fatally shot in the head, and Perry was shot in the shoulder. Nelson then drove the car to Rhode Island Hospital, where the two injured men were taken inside for treatment.

Doctor, 690 A.2d at 323.

## IV. ARGUMENT

Jose's Petition is procedurally and substantively flawed. As an initial matter, the Petition is "mixed" insofar as it contains both unexhausted and exhausted claims. See Nowaczyk v. Warden, 299 F.3d 69, 75 (1st Cir. 2002). The Petition also lacks substantive merit as none of the Rhode Island Supreme Court's holdings were contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254.

### A. Jose Has Not Exhausted His State Court Remedies With Respect To The Claims Raised In Grounds 2 And 4 Of The Petition.

A district court may not adjudicate a petition for the issuance of a writ of habeas corpus unless and until the petitioner has exhausted his or her state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). "In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the

existence of the federal question.'" Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (internal quotation marks omitted)). A federal habeas petitioner may accomplish this by doing any of the following:

> (1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution.

Id. (citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987)).

In the instant case, an examination of the briefs that Jose filed in the Rhode Island Supreme Court in connection with his direct and PCR appeals evidences his failure to exhaust his state court remedies in part or in whole with respect to two claims. In Ground Two of his Petition, Jose alleges that defense counsel was constitutionally ineffective because he (1) failed to investigate a discrepancy regarding the number of passengers in the vehicle that Jose shot at and (2) failed to discover that one of the passengers in that vehicle, Kimani Morris, shot a gun, and raise self-defense as a defense at trial. *See* Petition at 7. The only ineffective assistance claims that Jose raised in state court related to defense counsel's alleged failure to investigate discrepancies regarding the number of passengers in the automobile that Jose shot at and alleged failure to discuss the incarceration instruction that the Superior Court gave at trial with him. *See* Exhibit F at 12 (vehicle occupancy issue) and 13-14 (incarceration instruction issue). Although Jose claimed that a thorough investigation regarding the number of occupants in the vehicle might have revealed that Kimani Morris admitted shooting a gun, this is information that Jose already had,[3] and, in any event, Jose never alleged that his attorney's failure to pursue this issue at his third and final trial constituted ineffective assistance of counsel.

---

[3] The Superior Court's failure to permit defense counsel to examine Morris on this point at Jose's second trial served as grounds for the reversal of Jose's convictions. *See* Doctor, 644 A.2d 1288-91.

In Ground Four of his Petition, Jose alleges that his attorney was constitutionally ineffective by having "fail[ed] to investigate and/or examine witness [sic]; there was testimony that could have been available for petitioner's 1995 trial, that the lawyer failed to investigate." *See* Petition at 7. Jose identifies neither the witnesses that should have been examined nor the testimony that could have been elicited at trial. Regardless, the only ineffective assistance claim advanced in state court related to the issue of vehicle occupancy contained in Ground Two; Jose did not exhaust any other ineffective assistance claims, including that asserted in Ground Four.

In objecting to the State's motion to dismiss his habeas petition, Alexis explained that his identical ineffective assistance claim related to defense counsel's failure to investigate evidence that Rodney Perry, another occupant in the vehicle at which Jose and Alexis shot, recanted his Grand Jury testimony in which he identified Alexis and Jose as the shooters. *See* Exhibit 2 at 1-1, 16-17. Even assuming that Jose is advancing the same argument, this elucidation would not help him clear the exhaustion hurdle. First, Jose raised the Perry recantation issue in his PCR application in the context of a newly discovered evidence argument, not ineffective assistance of counsel. Second, Perry did not testify at Jose's trial and his previous statements identifying Jose and Alexis as shooters did not come into evidence. Assuming the veracity of his recantation, his testimony at trial would have at best established that Perry did not see whom it was that shot at him. This is not sufficient to sustain an ineffective assistance claim. *See* Strickland v. Washington, 466 U.S. 668, 687 (1984) (ineffective assistance claim requires showing that, absent counsel's deficient performance, the result of the proceeding would have been different). Third, the state court deemed Perry's recantation unreliable—he waited thirteen years to come forward and recant his previous identification and did so only after he received a life sentence

(plus eight years) for the murder of the Doctors' juvenile accomplice in the instant case. *See* Doctor, 865 A.2d at 1070-71.

Where, as here, a petitioner has filed a "mixed" petition, that is, a habeas petition containing both exhausted and unexhausted claims, *see* Nowaczyk v. Warden, 299 F.3d 69, 75 (1st Cir. 2002), a district court should generally dismiss the petition without prejudice unless (1) the petitioner chooses to waive the unexhausted claims, *see* Rhines v. Weber, 544 U.S. 269, 277-79 (2005); Rose v. Lundy, 455 U.S. 509 (1982), or (2) the petitioner establishes that there was "'good cause" for failing to exhaust the state remedies, the claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory tactics,'" in which case a district court may stay a habeas petition and hold it in abeyance until the petitioner exhausts the unexhausted claims, Josselyn v. Dennehy, 475 F.3d 1, 4-5 (1st Cir. 2007). The State would respectfully submit that, unless Jose elects to waive the claims advanced in Grounds Two and Four of his Petition, something that Alexis agreed to do when the State moved to dismiss his identical petition, *see* Exhibit 2 at 1-3; Exhibit 3 at 3, a dismissal without prejudice is appropriate as there does not appear to be any "good cause" for invoking the "stay and abeyance" exception in this case.

**B. This Court Should Deny The Instant Petition On Its Merits.**

To the extent that this Court were to reach the merits of Jose's remaining claims, it should deny each on its merits. Title 28, section 2254 of the United States Code governs this Court's consideration of habeas corpus petitions and states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.

The terms "contrary to" and "unreasonable application" in § 2254 have independent meaning. *See* Bell v. Cone, 535 U.S. 685, 694 (2002). The "contrary to" clause applies only when a state court either employs a test or rule of law that is inconsistent with one announced by the United States Supreme Court or reaches the opposite conclusion on materially indistinguishable facts. *See* id.; Williams v. Taylor, 529 U.S. 362, 404-10 (2000); Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). An "unreasonable application" of federal law exists when a state court (1) uses the correct legal standard in an objectively unreasonable manner, (2) unreasonably extends Supreme Court precedent to an inappropriate context, or (3) fails to extend such Supreme Court precedent to an appropriate context. *See* Bell, 535 U.S. at 694; Rashad, 300 F.3d at 34-35. This standard "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." Rashad, 300 F.3d at 34-35.

Moreover, an *unreasonable* application of Supreme Court precedent is not the same as an *erroneous* application; "the mere fact that there was some error or that the state decision was incorrect is not enough." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court. If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36-37.

Finally, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad, 300 F.3d at 35-36 (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). Unless a petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts on the trial and appellate levels. *See* id. This includes those reasonable inferences drawn by the state courts from the evidence presented at trial as well as the trial record. Id. at 39 n.8.

It cannot be said that the Rhode Island Supreme Court's denial of Jose's exhausted claims was contrary to, or involved an unreasonable application of, clearly established Federal law.

1. Ground One

In Ground One of his Petition, Jose asserts that the Superior Court improperly precluded his attorney from cross-examining a witness for bias, prejudice, and ulterior motive. Although Jose does not elaborate in his Petition, he claimed on direct appeal that the Superior Court prevented him from cross-examining the aunt of the man he murdered, Vicky Brown Strong, about whether she was aware of the civil lawsuit that the victim's mother had filed pursuant to the Rhode Island Criminal Injuries Compensation Act. The Rhode Island Supreme Court denied this claim, holding as follows:

> [The Doctors] offer or suggest to us, however, no evidence from the record that indicates or even permits the inference that Strong's testimonial denial of having any knowledge about her sister's civil suit was anything but truthful. At trial, defense counsel sought to cross-examine Strong in regard to whether she thought that a conviction was a necessary prerequisite for her sister to recover in that civil suit, ignoring, of course, Strong's earlier denial of having any knowledge of that civil suit. Although the language of § 12-25-3(f) clearly precludes the necessity of a conviction before recovery, the defendants at trial apparently believed that if they could show that Strong did know of her sister's civil suit and also that she believed that the defendants' convictions were a necessary prerequisite for recovery in that civil suit, those combined facts would then be a sufficient basis for causing Strong to be untruthful in her testimony. In refusing to allow such cross-examination, the trial justice noted that the act does not, by its terms, require any conviction. He explained further to defense counsel that he was going to

terminate counsel's questioning of the witness about her sister's civil suit because the witness had answered, "[N]o, I don't know," in response to the defense counsel's question "[H]as she communicated to you what, if anything, she's going to do about this incident? * * * [W]hat she's going to do with--about this case?" We agree with the trial justice's ruling.

"Effective cross-examination is an essential element of the presentation of a full and fair defense and is guaranteed by both the State and the Federal Constitutions." State v. Veluzat, 578 A.2d 93, 94 (R.I. 1990). Moreover, "the cross-examiner must be given a reasonable opportunity to explore and to establish any possible bias, prejudice, or ulterior motive that a witness may possess that might affect the witness' testimony." Id. at 94-95. Nevertheless, "the scope of cross-examination, even for the purpose of exposing bias [or motive], is not unlimited. Limiting the extent and scope of cross-examination is within the sound discretion of the trial justice, and any such ruling by a trial justice will be left undisturbed by this court absent a showing of clear abuse of that discretion." Id. at 95. Although some limitation of the extent and the scope of cross-examination is permissible, in order to ensure that the defense receives a fair trial, the trial justice must permit "reasonable latitude" on cross-examination, including "an opportunity for a defendant to establish or reveal possible bias, prejudice, or ulterior motives as they may relate to the case being tried." State v. Anthony, 422 A.2d 921, 924 (R.I. 1980). Such reasonable latitude was certainly provided to the defendants' counsel in this case.

The defendants here were clearly afforded full opportunity to inquire about whether Strong had any knowledge of her sister's civil action brought under the Criminal Injuries Compensation Act. Strong was specifically asked by defense counsel whether Strong's sister had "communicated to * * * [her] what, if anything, she's going to do about this incident? * * * [W]hat she's going to do with--about this case?" Strong, however, had responded, "[N]o, I don't know." The trial justice's decision to terminate the inquiry concerning her sister's pending civil action at that point was proper. The trial justice did not abuse his discretion in limiting defense counsel from further cross-examining the witness Strong about a matter that she testified she had no knowledge of. No case law has been presented that supports such pointless continued cross-examination and we hesitate to create it in this case.

Defense counsel had certainly been given ample opportunity to explore for any signs of bias in the witness. If, notwithstanding, he believed that he had not adequately exhausted his opportunity to do so, he certainly could have indicated to the trial justice just what he was digging for but could not unearth. An offer of proof pursuant to Rule 26(b) of the Superior Court Rules of Criminal Procedure was available to him. Instead, however, defense counsel simply informed the trial justice that the court could not "require" him to make an offer of proof on cross-examination pursuant to State v. DeBarros, 441 A.2d 549 (R.I. 1982), thus effectively refusing to assist the trial justice by making an offer of proof. We acknowledge defense counsel's reliance upon DeBarros, and its clear support for

> counsel's refusal. Rule 26(b), which had been adopted some ten years earlier, is not opposite <u>DeBarros</u>. Rule 26(b) *permits* offers of proof, but does not mandate such offers. In this case, however, the trial justice obviously believed that defense counsel had been given adequate opportunity to cross-examine on the possible bias of the witness. Had an offer of proof been made, we would now certainly be in a better position to determine therefrom whether the trial justice had abused his trial-control discretion in terminating defense counsel's further questioning on that issue. If the trial justice was unable to see the need for any further cross-examination on the bias issue, we on review are less able to do so in the absence of an offer of proof from counsel or some indication in or from the record of where the continuing questioning might eventually have led. If that direction had been indicated, the trial justice might then have been alerted to information not otherwise available to him and he might very well have then permitted defense counsel to continue his inquiry. If counsel did not want to expose his intended area of further cross-examination to the ears of the witness, he certainly could have requested a sidebar conference, out of the hearing of the witness, where a record of his offer of proof could have been made and preserved for later review. Absent that offer of proof, or some indication on the record of what counsel believed that he could unearth, we are unable to perceive any abuse of discretion in the trial justice's ruling.
>
> Absent that offer of proof or some indication from counsel on the record in regard to what might have developed from his continued questioning of the witness Strong, there appears to have been no evidence before the trial justice from which he might have concluded that continued questioning by defense counsel or a "voir dire" of the witness would have produced any additional probative evidence from her that would have been of any assistance to the defendants.
>
> As was aptly put by Justice Kelleher, "a fishing expedition on cross-examination may properly be brought to a halt when it becomes obvious that the pond is devoid of fish." <u>State v. Brennan</u>, 527 A.2d 654, 657 (R.I. 1987). When Strong answered defense counsel's inquiries in the negative, the pond was deemed empty and defense counsel had opportunity to then either tell the court where he believed the fish were hiding or to pack up his fishing gear and try elsewhere. Defense counsel, however, elected not to inform the trial justice whether he believed there were any fish in the pond. Accordingly, there was no abuse of discretion in the trial justice's ruling limiting the cross-examination of Strong about what she might have believed regarding the sister's civil action, of which the witness testified she was unaware. The defendants' claim of error is without merit.

<u>Doctor</u>, 690 A.2d at 326-328 (footnotes omitted).

It cannot be said here that the Supreme Court's holding that Jose's Sixth Amendment rights were not violated by the trial justice's preclusion of further inquiry of Strong was either

erroneous or incorrect, let alone *unreasonably* so. Similar to the Rhode Island Supreme Court's discussion of the Sixth Amendment issue, the First Circuit has reaffirmed that:

> In the last analysis, . . . the right to cross-examination is not unbridled. So long as the trial court affords the defendant a fair opportunity for effective cross-examination, it may impose reasonable restrictions based on concerns such as undue prejudice, confusion of the issues, witness badgering, redundancy, *or questioning that appears to be of marginal relevance*. Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The trial court's latitude in shaping such restrictions is "wide." Id.

United States v. Vega Molina, 407 F.3d 511, 523 (2005) (emphasis added).

Because, as the Rhode Island Supreme Court explained, the fact that victim's mother had filed a claim was all but irrelevant to the aunt's motive to testify (especially since conviction was not even a pre-requisite to a claim under the Act), and because defense counsel was without question given wide latitude in cross-examining Strong, the Rhode Island Supreme Court's determination of this issue was not plainly erroneous, let alone unreasonably so. This Court reached this conclusion in denying and dismissing Alexis's habeas petition. *See* Exhibit 3 at 5-7.

2. Ground Two

The Rhode Island Supreme Court's determination—in the course of its Opinion denying Alexis's appeal of the Superior Court's denial of his post-conviction relief application—that defense counsel was not constitutionally ineffective in failing to "pursue a line of questioning," Doctor v. State, 865 A.2d at 1069, can also in no way be characterized as unreasonably erroneous. The court explicitly rejected the claim that Jose now includes as part of Ground Two in his Petition—that "his [trial] counsel was ineffective because he did not pursue a line of questioning regarding a discrepancy between the testimony at the juvenile Lewis' Family Court proceedings and the testimony at Doctor's trial." Id. at 1069. The court held as follows in rejecting this claim:

> In the Family Court proceeding, testimony was proffered that only four individuals were in the car during the shooting. *See* In re Douglas L., 625 A.2d at 1357, 1358 (R.I.1993). At Doctor's trial, however, the testimony revealed that six people were in the car. *See* Doctor, 690 A.2d at 323. Doctor offers no argument why a line of questioning on this point would change the verdict at a new trial. In fact, the juvenile Lewis, Doctor's accomplice, was convicted of assault with intent to murder after a trial in the Family Court with the testimony that there were only four passengers in the car. *See* In re Douglas L., 625 A.2d at 1358. In our opinion, any questioning advanced by counsel concerning the number of people in the car would make no difference in the outcome of a new trial.
>
> Moreover, Doctor has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Brown, 534 A.2d at 182 (quoting Strickland, 466 U.S. at 689). Defense counsel's decision not to raise a line of questioning concerning the number of people in the car clearly "fell within that acceptable range of latitude afforded defense counsel to determine trial strategy and therefore was not unreasonable." Id. at 183. *See also* Toole, 748 A.2d at 809-10 (failure to call certain witnesses and to object at certain points during a trial was not constitutionally unreasonable); Hughes v. State, 656 A.2d 971, 972-73 (R.I. 1995) (failure to argue against admissibility of evidence and challenge jury instructions was not unreasonable); Brown, 534 A.2d at 183 (failure to admit certain evidence was not unreasonable); State v. D'Alo, 477 A.2d 89, 91-93 (R.I. 1984) (failure to object to certain testimony, counsel making improper statements to the trial justice resulting in mild admonishment in front of jury, and failure to brief certain issues on appeal was not ineffective assistance of counsel).

Doctor, 865 A.2d at 1069.

The State would once again submit that this ineffectiveness determination is by no means erroneous, let alone unreasonably so. As this Court found in denying Alexis's habeas petition, the Rhode Island Supreme Court utilized the appropriate standards articulated in Strickland, and did not unreasonably apply the same insofar as the decision not to pursue the discrepancy issue fell within the latitude afforded defense counsel to determine trial strategy, and, in any event, did not prejudice Jose. *See* Exhibit 3 at 8-9.

3. Ground Three

The Supreme Court also did not unreasonably err in denying the claim that Jose advances in Ground Three, that the Superior Court erred in instructing the jury that Jose was in custody at

the time of trial and not to factor that into its deliberations. The court held as follows in dismissing this claim:

> First he contends that his counsel, a highly respected veteran in the Public Defender's Office, failed to discuss a proposed Fenner instruction with him and failed to object to the instruction when it was given. He specifically alleges that his "counsel did not discuss with him and failed to object to the trial justice instructing the jury at the beginning of the trial that he was in custody for lack of bail." ***
>
> In reviewing a claim for ineffective assistance of counsel, we have adopted the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). *See* Armenakes v. State, 821 A.2d 239, 245 (R.I.2003); Brennan v. Vose, 764 A.2d 168, 171 (R.I.2001); La Chappelle, 686 A.2d at 926; Brown v. Moran, 534 A.2d 180, 182 (R.I.1987). Under Strickland, a two-part test must be satisfied: (1) the court "must be persuaded that counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced that defendant to such a degree that he was deprived of effective assistance of counsel." State v. Figueroa, 639 A.2d 495, 500 (R.I.1994) (citing Strickland, 466 U.S. at 687-88). Under the first part "[i]n reviewing a claim for ineffective assistance of counsel, [this Court has] stated that the benchmark issue is whether 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Toole v. State, 748 A.2d 806, 809 (R.I.2000) (quoting Tarvis v. Moran, 551 A.2d 699, 700 (R.I.1988)). *See also* Carpenter v. State, 796 A.2d 1071, 1073-74 (R.I.2002). Furthermore, "[a] strong presumption in favor of competent representation exists." Figueroa, 639 A.2d at 500 (citing Strickland, 466 U.S. at 689-90). Under the second part of the test, "[p]rejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." *Id.* (citing Strickland, 466 U.S. at 687).
>
> At the outset it is important to note that while it is not certain whether the trial justice conferred with counsel concerning the Fenner instruction, or whether counsel conferred with Doctor about the instruction, the weight of the credible evidence presented suggests that both occurred. Counsel for both Alexis and Jose Doctor testified at the hearing. Neither could remember this particular case with specificity, but they both testified that it was their normal practice to confer with their clients concerning Fenner instructions, and that they would have objected to the instruction if asked to do so by their respective clients. The hearing justice, who also was the trial justice, also stated that it was his normal practice to consult with counsel before delivering a Fenner instruction to the jury and noted that he could "not remember ever gratuitously offering such an instruction without notifying counsel that [he] intended to do so." The only evidence to the contrary was Doctor's own assertions that neither the trial justice nor his own counsel conferred with him about the Fenner instruction.

> Furthermore, even if counsel neglected to confer with Doctor regarding the Fenner instruction, we agree with the hearing justice's determination that Doctor was not prejudiced by the Fenner instruction that was given to the jury at the January 1995 trial. The courtroom was small and crowded and several marshals were present in the room, some in very close proximity to defendants. It is highly likely that the jury knew that the two defendants were in custody, and it should have been no surprise to the jurors when the trial justice so informed them. In our opinion, counsel's objection to the instruction being given would not have changed the outcome in this case.

Doctor, 865 A.2d at 1067-69 (parallel citations and footnotes omitted).

The State would once again submit that, as this Court found in denying the identical claim in Alexis's habeas petition, *see* Exhibit 3 at 9-11, this reasoned and persuasive conclusion is not "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## V. CONCLUSION

For the reasons identified above, this Court should dismiss or deny Victor Perez's "Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody."[4]

---

[4] In accordance with Rule 5(c) of the Rules Governing Section 2254 Cases In The United States District Courts, the Department of Attorney General states that it does not possess any transcripts from this case. With rare exception, the Department of Attorney General does not copy the official transcripts prepared in connection with the appeal of a judgment of conviction to the Rhode Island Supreme Court. Copies of the transcripts on file in state court could be furnished upon request; the amount of time it would take to furnish the transcripts would depend on whether the file is located at the state court clerk's office or whether the clerk previously transferred the file to an off-site records center for long-term storage.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Christopher R. Bush**

**CHRISTOPHER R. BUSH, #5411**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: October 25, 2007

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that I filed this document electronically on October 25, 2007, and that it is available for viewing and downloading from the ECF system. I also certify that I sent a copy of the within memorandum to the following by first-class mail on the same date:

Jose Doctor
P.O. Box 8273
Cranston, R.I. 02920

/s/ Christopher R. Bush